## ABBOTT v. PETERSBURGH GRANITE QUARRYING CO.

*(Supreme Court, General Term, First Department.  December 31, 1891.)*

1. CORPORATIONS—REDUCTION OF CAPITAL STOCK—AGREEMENT WITH STOCKHOLDER.
   An agreement between officers of a corporation and a stockholder thereof, whereby the latter is to surrender his stock, and receive in exchange a less amount of reduced capital stock, is binding upon the company, when the agreement has been sanctioned by it in the proceedings for the reduction of its capital stock, and has been approved by its directors.

2. SAME.
   The stockholder is not precluded from maintaining an action against the company for stock claimed under such agreement by reason of a promise by its president, made after the original agreement, and never fulfilled, that, if a certain person would confirm plaintiff's claim,—which he did,—the president would give plaintiff an amount of his own stock equal to that claimed.

3. APPEAL—HARMLESS ERROR—EVIDENCE OF COLLATERAL MATTERS.
   The exclusion of evidence relating to collateral matters does not afford ground for reversal, where it is evident that its reception would not have affected the determination of the jury.

Appeal from circuit court, New York county.

Action by James Abbott against the Petersburgh Granite Quarrying Company to recover the value of certain reduced capital stock, to which plaintiff claimed to be entitled by agreement.  Judgment for plaintiff, and order denying a motion for a new trial.  Defendant appeals.  Affirmed.  For former report, see 16 N. Y. Supp. 379.

Argued before VAN BRUNT, P. J., and DANIELS and INGRAHAM, JJ.

*James H. Fay,* for appellant.  *Christian G. Moritz,* for respondent.

DANIELS, J.  The verdict was recovered for the sum of $350, as the value, with interest, of 20 shares of stock of the defendant, which the plaintiff claimed to be entitled to by an agreement made with him for the surrender of other shares held by him, and the reduction of the capital of the company. At the time of its organization this capital consisted of the sum of $150,000, divided into 15,000 shares of the par value of $10 a share.  By the reduction which was contemplated the capital was to be reduced to the sum of $75,000, leaving the par of the shares the same as they previously were.  And the tendency of the evidence was very direct to establish the fact that, upon the surrender of the shares owned by the plaintiff in the company, he was to receive as his portion of the new stock 1,800 shares.  There is no ground for the objection that the company did not become bound for the performance of the agreement made with the plaintiff; for it was made by persons interested in the affairs of the company as officers and directors, and was sanctioned and acted upon by the company itself, in the proceedings taken for the reduction of its capital.  What these persons did received the entire approval of the directors of the company.  If, therefore, the agreement itself was entered into, the company, in this manner, became bound to the plaintiff for its performance.  And the evidence of Mr. Hoyt, who was one of the directors, as well as that given by the plaintiff in his own behalf, very directly tended to establish the existence of the agreement, as that was alleged to have been made on behalf of the plaintiff.  The effect of this testimony was controverted by that which was given by the president of the company, which left the question to be determined by the jury as to which of the witnesses was correct in the statements made by them.  Beyond that, the president stated, further, that, if the plaintiff was right as to the claim made by him, Mr. Hoyt was the proper party to settle it, as he was conversant with the affair, and that he would leave it to him if it was agreeable to all parties; and to that the plaintiff assented, Mr. Dibbell adding that, if Mr. Hoyt decided against him, he would give the plaintiff 20 shares of his own personal stock.  Mr. Dibbell, the president of the company, wrote to Mr. Hoyt, stating what had occurred;

and he, in reply, informed Mr. Dibbell that the plaintiff was correct in his claim, as that fully appeared to be the case by the evidence given by Mr. Hoyt as a witness. And in this state of the evidence the jury were clearly warranted in concluding that the contract relied upon by the plaintiff as the ground of the action has been established.

The plaintiff was not precluded from maintaining the action by the promise of Mr. Dibbell to give to him 20 shares of his own stock in case Mr. Hoyt confirmed the claim made by the plaintiff; for the obligation, resting, as it did, after the adoption of the arrangement, upon the company, was in no manner changed or extinguished by this agreement of the president to deliver these 20 shares of stock out of those owned by himself. There was no delivery of these shares, and consequently no satisfaction of the plaintiff's claim, but he was still entitled to resort to the company for that satisfaction which, by the agreement, he had become entitled to receive.

Exceptions were taken to the exclusion of evidence, during the trial, upon which reliance has been placed to support the appeal. But the evidence which was excluded related entirely to collateral matters having no direct effect upon the plaintiff's right, or the probability of the statements made by him concerning the agreement which had been entered into. They do not require any specific attention; for it is quite clear that, if all the testimony had been received which was rejected by the court, no difference whatever could have resulted from that in the final decision of the case by the jury.

The only evidence as to the value of the shares was that they were worth their par value of $10 each share. This evidence was given both by Mr. Hoyt and by the plaintiff himself. And there was no such statement or disclosure of the financial situation of the company, or of its property, as would sustain the conclusion that this stock was worth any greater amount than $10 a share. For that reason, assuming the contract to have been made, as the jury must have done in the conclusion reached by them, the plaintiff was entitled to recover no more than the sum of $200, together with interest upon that amount from the time when the officers refused to deliver to him these additional 20 shares. That was less than the amount of the verdict of the jury. And on that account the judgment and order should be reversed, and a new trial ordered, with costs to the defendant to abide the result, upon the payment by the defendant of the costs and disbursements of the trial, and without costs of this appeal, unless within 20 days after the service of the order to be entered upon the decision the plaintiff shall stipulate to reduce the verdict to the sum of $200, together with interest upon that amount from the time the shares were demanded; and, in case the stipulation shall be given, then the judgment as so modified will be affirmed, without costs of this appeal. All concur.

See concurring opinion by INGRAHAM, J., 17 N. Y. Supp. 959.